**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

ISAAC RUSSELL,
ADC #132326                                                                                      PLAINTIFF

v.                                            5:11-cv-00159-SWW-JTK

CORRECTIONAL MEDICAL
SERVICES, INC., et al.                                                                     DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.  Why the record made before the Magistrate Judge is inadequate.

2.  Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

1

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. Introduction

This matter is before the Court on the Defendants' Motion for Summary Judgment (Doc. No. 76). Plaintiff filed a Response in opposition to the Motion (Doc. No. 84).

Plaintiff Russell is a state inmate incarcerated at the East Arkansas Regional Unit of the Arkansas Department of Correction (ADC). He filed this action pursuant to 42 U.S.C. § 1983 against Defendants, alleging deliberate indifference to his medical needs with respect to a shoulder injury/condition. Plaintiff asks for monetary and injunctive relief against Defendants Correctional Medical Services, Inc. (CMS – now Corizon), Doctors David Ware, Shirley Barnes, and Roland Anderson, and Advanced Nurse Practitioner (APN) Connie Hubbard.

According to his Amended Complaint (Doc. No. 7), Plaintiff injured his left shoulder when moving his rack in February or March, 2010. In June, 2010, a consult for him to be seen by an orthopedic specialist was submitted to and denied by Defendant Anderson. Defendant Hubbard

examined him in June, 2010, and refused to document in Plaintiff's chart that he had a bone protruding from his left shoulder, and refused to send Plaintiff to an orthopedic specialist. In July or August, 2010, another consult for Plaintiff to be seen by a special needs clinic was submitted and eventually approved. Although Plaintiff was seen at the clinic by Defendant Anderson on January 24, 2011, the special needs clinic turned out to be a foot clinic and Anderson is a podiatrist and not an orthopedic specialist. In addition, he did not prescribe an adequate course of treatment for Plaintiff's shoulder injury. Later, although Defendant Ware documented that Plaintiff's left shoulder was dislocated and had a clavicle fracture, Defendants refused to send Plaintiff to see an orthopedic specialist or have a MRI test. Plaintiff saw Defendant Dr. Barnes in April, 2011, and she was deliberately indifferent by avoiding knowledge of his dislocated shoulder and failing to order effective pain-relieving medication. Plaintiff claims Dr. Barnes also refused to document the bone sticking up from his shoulder. Plaintiff alleges Defendant CMS persisted in a course of ineffective treatment which caused him unnecessary and wanton infliction of pain, and that all Defendants conspired to deprive him adequate care and treatment.

## II. Summary Judgment Motion

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other

citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

**A.   Exhaustion**

**1.   Defendants' Motion**

Defendants state that Plaintiff failed to exhaust his administrative remedies with respect to his allegations against CMS and Dr. Barnes, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C.§ 1997e, and the ADC administrative grievance procedure. Defendants present the Declaration of Sherrie Williams, Medical Grievance Investigator for the ADC, who states that the grievance procedure requires inmates to be specific as to the personnel involved in their grievance complaint. (Doc. No. 78-6, p. 1.) See also Administrative Directive (AD) 09-01. IV.E.2 (effective 1/30/09), and AD 10-32.IV.E.2 (effective 1/1/11) (Doc. No. 78-6, pp. 2-36). Ms. Williams also states that Plaintiff filed and completely exhausted ten medical grievances between April 1, 2010 (the time he began seeking medical treatment for his left shoulder), and June 23, 2011 (the date he filed his complaint) (Doc. No. 78-6, p. 1). Defendants state that CMS and Barnes are not named in any of those grievances (Doc. No. 78-6, pp. 37-46). Therefore, Defendants state these two Defendants should be dismissed for failure to exhaust administrative remedies, citing Booth v. Churner, 532 U.S. 731, 739, 741 (2001) and Johnson v. Jones, 340 F.3d 624, 627-28 (8th Cir. 2003).

### 2. Plaintiff's Response

Plaintiff responds by stating he did exhaust his remedies as to Defendant CMS, pointing to grievances OR-11-00177, DR-10-00494, and DR-10-00342, where he refers to "CMS medical employees." (Doc. No. 78-6, pp. 38, 44-45.) In addition, he states he filed and exhausted grievance RLW-11-00276, which named Defendant Barnes (Doc. No. 85, p. 21).

### 3. Analysis

According to the PLRA,

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit. In Booth v. Churner, supra, 532 U.S. at 741, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." In addition, in Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000), the Court held that "the statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" In Johnson v. Jones, supra, 340 F.3d at 627, the Court held that "under the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory." (Emphasis in original) Finally, in Jones v. Bock, 549 U.S. 199, 218 (2007), the Supreme Court held that while the PLRA itself does not

require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."

The Court finds that Plaintiff's reference to "CMS medical employees" in grievances OR-11-00177, DR-10-00494, and DR-10-00342, do not cover the allegations in his Complaint against Defendant CMS. Therefore, he failed to exhaust his administrative remedies as to CMS. In addition, although Plaintiff did refer to Dr. Barnes in grievance RLW-11-00276, that grievance was not exhausted until after he filed his complaint, and therefore, he did not properly exhaust his remedies as to Defendant Barnes prior to filing this lawsuit. Therefore, these two Defendants should be dismissed for failure to exhaust.

### B.     Deliberate Indifference

#### 1.     Defendants' Motion

Defendants also state Plaintiff fails to support an Eighth Amendment claim for deliberate indifference against them, because his allegations amount only to a disagreement over the type of treatment he received. Defendants present the relevant medical records of Plaintiff to show the following:

- Plaintiff filed a sick call on April 14, 2010 about his shoulder (Doc. No. 78-1, p. 10).

- Plaintiff attended sick call on April 14, 2010 with complaints about back pain (no mention of shoulder). Id. at p. 11.

- Plaintiff was seen by Dr. David Fort on April 22, 2010. Id. at p. 12. Plaintiff complained about shoulder pain and that a bone was sticking out from his shoulder. Id. Dr. Fort's notes state as follows: "Bony prominence near left AC joint and feels stable. No crepitus. FROM to abduction and overhead reach. Cross body negative. NEURO: Grips good and equal." Id. Dr. Fort ordered

an x-ray and prescribed Tramadol and Ibuprofen for pain.  Id.

- The April 23, 2010 x-ray exam indicated a normal left shoulder. Id. at p. 13.

- Defendant Hubbard examined Plaintiff on June 9, 2010 for a followup of the left shoulder, and Plaintiff's complaint about a "boney knot." Id. at p. 14.  Hubbard reviewed the x-ray which showed no abnormalities and noted no appreciable difference "in strucute." Id.  She assessed him with left shoulder pain and submitted a consultation request. Id. at p. 15.

- The consultation request was reviewed by Defendant Anderson on June 14, 2010. Id. at p. 16.  He denied the request, noting the normal x-ray and evidence of a soft-tissue injury.  He recommended that Plaintiff begin active range of motion exercises and be followed closely for compliance. Id.

- Plaintiff was seen at sick call on July 7, 2010 for shoulder pain. Id. at p. 17.  The nurse noted no swelling, redness, or warmth to the area, and no difference in girth or deformity.  She prescribed Tylenol for pain and referred Plaintiff to a physician. Id.

- Plaintiff saw Defendant Hubbard on July 23, 2010, complaining about shoulder pain and stating that exercise would not fix his shoulder. Id. at p. 18.  He also told her that sometimes he has pain and sometimes he doesn't. Id.  Hubbard found that Plaintiff demonstrated full range of motion of his left shoulder and found no point of tenderness.  Concluding he had "subjective pain...with no obvious defects," she advised him to do the exercises and prescribed Indomethacin and Nortriptyline for pain. Id. at pp. 18-20.

- Plaintiff appeared at sick call on August 11, 2010, requesting a different pain killer and complaining that his shoulder grinds during the exercises. Id. at 21. Plaintiff's medication was changed. Id.

- Plaintiff returned to the clinic on September 22, 29, and 30, 2010, and requested Tramadol. He was referred to the nurse. Id. at p. 22-23.

- Defendant Hubbard completed a consultation request on October 15, 2010, in which she noted that Plaintiff complained that his shoulder crunches and cracks. Id. at p. 25.  She also was not able to fully examine him because he was shackled, and referred him to Defendant Anderson. Id.

- On December 14, 2010, Plaintiff was seen at the Ouachita River Correctional Unit (ORCU), for complaints that his shoulder popped out of socket. Id. at p. 26. The nurse noted no swelling and prescribed Tylenol for pain. Id.

- Plaintiff was seen at a sick call on January 5, 2011 and was referred to the physician. Id. at p. 27.

- Plaintiff was seen by Defendant Anderson on January 24, 2011 in a Special Needs Clinic. Id. at p. 27.  He did not note any deformity, found no objective signs of shoulder injury, and recommended the range of motion exercises. Id.  He also noted that Plaintiff refused to participate in any range of motion exercises during his evaluation. Id.

- Plaintiff presented at sick call on February 2, 2011, and requested medication and a sling. Id. at p. 30.  Defendant Ware prescribed Tramadol and issued medical restrictions and a sling on February 16, 2011, and performed a physical exam on Plaintiff on March 14, 2011, where he medically classified him as M-3.  Id. at pp.31-35.

- Plaintiff was examined by Defendant Ware on March 22, 2011, requesting surgical repair of his shoulder. Id. at p. 36. Defendant noted no findings to support Plaintiff's complaints of tenderness, and noted a plan for MRI, continued use of the sling for rest and support, and aggressive rehabilitation. Id.

- Plaintiff was seen at the Randall L. Williams Correctional Facility (RLWCF) on April 22, 2011, complaining that his left shoulder was dislocated and he needed a consult for surgery. Id. at p. 38. The nurse noted no swelling, redness, warmth or tenderness upon palpation, and that Plaintiff was on pain medication. Id.

- Defendant Barnes examined Plaintiff on April 18, 2011. Id. at p. 39. She noted no findings of a shoulder injury and that Plaintiff refused to participate in shoulder exercises because of pain. Id. She ordered an x-ray, that the use of the sling be tapered, and prescribed anti-inflammatory medications. Id.

- Plaintiff received two shoulder-view x-rays on April 21, 2011, which showed no fracture or dislocation, and mild to moderate joint arthropathy. Id. at p. 40.

- Plaintiff appeared at sick call on May 20, 2011, and May 24, 2011, complaining about shoulder pain. Id. at pp. 41-42. He saw defendant Barnes on May 31, 2011. Id. at p. 43. She noted symmetrical shoulders, no muscle wasting, no atrophy, no edema, no joint warmth, no swelling, no evidence of malformations, and that his left shoulder was normal and similar in appearance to his right shoulder. Id.

- Plaintiff was seen at sick call on June 8, 2011, for shoulder pain and was referred to the nurse. Id. at p. 44. Dr. Barnes reviewed his records on June 9, 2011, noted that Plaintiff was seen by multiple providers for his complaints, and found no need for a MRI. Id. at p. 45.

- Dr. Barnes saw Plaintiff on June 12, 2011, and prescribed him Indomethacin for pain. Id. at p. 46.

- Plaintiff was seen at sick call for several complaints on June 21, 2011, and saw Defendant Barnes on June 27, 2011. Id. at pp. 47-48. She noted that a consult for an orthopedic evaluation was

submitted and that an alternative treatment plan was suggested. Id. at p. 48. Pursuant to that alternative treatment plan, she discontinued Plaintiff's sling, directed that he increase his range of motion exercises, and continued him with his medications. Id.

- Plaintiff appeared at sick call on July 7, 2011 and refused examination of his left shoulder. He was referred to the doctor. Id. at p. 49.

- Defendant Barnes saw Plaintiff on July 18, 2011, at which time she explained his x-rays were normal, that numerous physicians found no significant issues with his shoulder, that she submitted an orthopedic consult, and continued him with his treatment plan. Id. at p. 50.

- Plaintiff appeared at sick call on August 3, 2011, asking for pain medication, a sling, and an appointment with an orthopedic physician. Id. at p. 51. The nurse could not examine him, because he refused to move his arm. Id.

- Dr. Barnes saw Plaintiff on August 8, 2011, at which time he refused to allow her to examine him. Id. at p. 52. She changed his pain medication. Id.

In addition to these medical records, Defendants submit their declarations, stating that Plaintiff was treated continuously with pain medications and other treatment suggestions, and that the results of several x-rays indicated no abnormalities to his shoulder. (Doc. Nos. 78-1, pp. 1-8; 78-2, pp. 1-3; 78-3, pp. 1-2, and 78-4, pp. 1-3.) In addition, all four Defendants state that Plaintiff's shoulder was not dislocated, his clavicle was not broken, and a bone was not protruding from his shoulder. Defendant Anderson states that the records of his January, 2011 treatment of Plaintiff at the Special Needs Clinic incorrectly state that the clinic was a foot clinic. (Doc. No. 78-3, p. 1.) Dr. Ware states that their treatment approach to exercise generally works within twelve months if a patient is cooperative, but that Plaintiff did not cooperate with their directions. (Doc. No. 78-4, p.

2.) In addition, he states, "there was no reason to rush to do an MRI or ortho consult considering older men with poor health habits, arthritis, and a history of various trauma (e.g. Mr. Russell) who do not try to mobilize a painful major joint." Id. Ware concludes by stating that a MRI referral would be appropriate only after successful conservative mobilization rehab efforts, which did not seem to interest Plaintiff. Id.

Based on all of the above, Defendants state that Plaintiff cannot support an Eighth Amendment claim against them, because he cannot show that they acted with malicious and sadistic intent or with deliberate indifference to his serious medical needs, citing Jorden v. Farrier, 788 F.2d 1347, 1348 (8th Cir. 1986). In addition, they state prison medical personnel are entitled to exercise their medical judgments, and that Plaintiff cannot support an Eighth Amendment claim by disagreeing with the treatment. Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987), and Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007). They also note that Plaintiff fails to place any verifying medical evidence in the record to support a finding of a detrimental effect as a result of any delay in his treatment, as provided in Beyerbach v. Sears, 49 F.3d 1324 (8th Cir. 1995) (abrogated on other grounds). Finally, Defendants cite Dulany v. Carnahan, where the court stated, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment." 132 F.3d at 1240.

### 2. Plaintiff's Response

In his Response, Plaintiff relies on the statement of the first physician who examined him, Dr. Fort, that Plaintiff's left shoulder had a "bony prominence." (Doc. No. 78-1, p. 12.) He also provides the affidavit of a fellow inmate, Landon Ewing, who states that he has seen the bone

protruding from Plaintiff's shoulder. (Doc. No. 85, p. 12.) Plaintiff complains that none of the Defendants are orthopedic physicians, and that their treatment of his condition was "inadequate." (Doc No. 84, p. 2.) He claims the pain medication was ineffective and their refusal to send him to an orthopedic specialist or to order a MRI test proves their deliberate indifference to his serious condition. Plaintiff also claims that Defendants participated in a conspiracy to deprive him of adequate and proper medical care.

### 3. Analysis

In order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants were deliberately indifferent to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part

on other grounds).  Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment."  Dulany, supra, 132 F.3d at 1240.

Having reviewed Plaintiff's Complaint, Defendants' Motion and Plaintiff's Response, and the evidence provided in support, the Court finds no dispute of fact concerning the medical care and treatment provided to the Plaintiff by Defendants, and that Defendants are entitled to judgment as a matter of law on Plaintiff's claims against them.  The medical records show that Plaintiff was consistently treated by Defendants for his medical complaints, and that there was no evidence of a bone sticking out from Plaintiff's shoulder or of a fractured clavicle.  The x-rays indicate no signs of injury and state that Plaintiff's pain is due to arthritis.  Defendants responded to these test results by implementing a course of treatment for Plaintiff which included range of motion exercises to which Plaintiff refused to adhere.   Plaintiff provides no evidence, other than his own opinion and inmate Ewing's statement, to counter the evidence set forth in his medical records and the Defendants' affidavits.  Furthermore, he provides no evidence that their treatment of him was deliberately indifferent to his medical needs.  He also provides no evidence to establish the detrimental effect of a delay in treatment by Defendants.  Therefore, the Court finds that Plaintiff fails to meet his burden in responding to this Motion, to offer "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy."  Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8thCir. 1992), quoting Barnes v. Arden Mayfair, Inc., 759 F.2d 676, 681 (9th Cir. 1975).

### C. Conspiracy

In light of the Court's finding of no Eighth Amendment claim against Defendants, Plaintiff's allegations of conspiracy to deprive him of medical care and treatment also should be dismissed.

### III. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. No. 76) be GRANTED and Plaintiff's Complaint against Defendants be DISMISSED with prejudice.

IT IS FURTHER RECOMMENDED that all other pending Motions be DENIED as moot.

IT IS SO RECOMMENDED this 21st day of May, 2012.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE